# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PETER ZANIEWSKI, individually
   and on behalf of other similarly situated
   Assistant Store Managers,

               Plaintiffs,

  v.

PRRC INC., d/b/a PriceRite

              Defendant.

3:11-CV-01535 (CSH)

## RULING ON MOTION FOR CONDITIONAL CERTIFICATION
## OF A COLLECTIVE ACTION

**HAIGHT, Senior District Judge:**

In this purported class action, the named Plaintiffs are employed as assistant store managers in one or another of various retail grocery stores operated by Defendant PRRC, Inc. ("PriceRite") in the states of Connecticut, New York, or Massachusetts.  Plaintiffs allege that PriceRite violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and applicable state statutes by failing to pay them overtime compensation for hours worked in excess of 40 per week. They sue individually and on behalf of other similarly situated PriceRite assistant store managers (sometimes "ASMs").  PriceRite defends on the disputed ground that it properly classifies its ASMs as exempt from the relevant provisions of the FLSA and the state statutes.  Plaintiffs now move for

1

an order conditionally certifying an FLSA class and authorizing the giving of notice to potential class members.  PriceRite opposes that motion.

## I.  BACKGROUND

Plaintiffs seek by their Second Amended Complaint ("SAC") to bring a multi-state wide "collective action" under § 216(b) of the FLSA, by which employees seeking to recover under FLSA's substantive provisions may also assert claims on behalf of other "similarly situated" employees.  The purported FLSA collective action in this case includes all other PriceRite employees who have worked for PriceRite "as assistant store managers in all stores in Connecticut, Massachusetts, New York, Rhode Island and Maryland."  SAC ¶ 23.  Plaintiffs also purport to assert three class actions pursuant to Rule 23, Fed.R.Civ.P., on behalf of persons who worked for PriceRite as assistant store managers between specified dates in Connecticut, New York and Massachusetts respectively.  SAC ¶¶ 25, 33, and 41.

This Ruling resolves the named Plaintiffs' contested motion for conditional certification of a collective action under the FLSA,  and for authority to send notices of that action to putative opt-in plaintiffs. [Doc. 30].

## II.  DISCUSSION

**A.**   **Plaintiffs' Motion for Conditional Certification of an FLSA Collective Action**

**1.**   **Background**

The gravamen of Plaintiffs' complaint is that PriceRite violated the FLSA by requiring assistant store managers to work in excess of 40 hours a week without paying them overtime.

FLSA § 7, 29 U.S.C. § 207, requires employers to pay employees who work over forty hours per week "not less than one and one-half times the regular rate at which [the employees are] employed" for those overtime hours.   However, the FLSA exempts from its minimum wage and maximum hour requirements those employees who work "in a bona fide executive capacity" as defined by Labor Department regulations.   29 U.S.C. § 213(a)(1).   Administrative regulations classify employees as "executive" if (1) they are "[c]ompensated on a salary basis"; (2) their "primary duty is management of the enterprise . . . or of a customarily recognized department or subdivision thereof"; (3) they "customarily and regularly direct[] the work of two or more other employees"; and (4) they "ha[ve]  the authority to hire or fire other employees or" if their "suggestions and recommendations" on personnel decisions "are given particular weight." 29 C.F.R. § 541.100(a)(1)-(4).   The regulations further provide a non-exclusive list of characteristic "management" activities to which a court may look to determine whether an employee's "primary duty is management," *id.* § 541.100(a)(2).   I have taken these FLSA statutory and regulatory summaries and quotations from the Second Circuit's recent opinion in *Myers v. Hertz Corp.*, 624 F.3d 537, 542-543, 548 (2d Cir. 2010), where the court of appeals went on to note: "The exemption question, therefore, is a mixed question of law and fact," *id*. at 548 (citation omitted).

The exemption question is presented in the case at bar because PriceRite classifies all its ASMs as "executives," a classification to PriceRite's economic advantage since if lawful, it exempts the company from having to pay ASMs overtime otherwise mandated by the FLSA.   The ultimate merits question is whether that classification violates the statute, as Plaintiffs contend, or complies with the statutory and regulatory scheme, as Defendant contends.   I do not reach that issue at this preliminary stage in the case.   Rather, the question presented by this motion is whether Plaintiffs are

entitled to a conditional certification of a collective action under the FLSA as a vehicle for litigating their claim of a statutory violation.

**2.      The Second Circuit's Opinion in *Myers v. Hertz Corp.***

The FLSA provides in 29 U.S.C. § 216(b):

> Any employer who violates [FLSA's substantive provisions relating to minimum wages or maximum hours] shall be liable to the employee or employees affected in the amount of their unpaid [wages], and in an additional equal amount as liquidated damages. . . . . An action to recover the liability prescribed [in the preceding sentence] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself *or themselves and other employees similarly situated*.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

(Emphasis added.)   An action against an employer on behalf of named employees and others similarly situated has come to be known as a "collective action."

Throughout the life of this remedial statute, individual employees have frequently invoked § 216(b) to sue on behalf of other employees as well as themselves in a collective action.  Just as frequently, employers resist that invocation and contend that, in the circumstances of a particular case, a collective action is not appropriate.  District courts in this Circuit had to decide many such cases without the benefit of specific instructions from the court of appeals about how to go about it.  Not surprisingly, not all the district court decisions can be reconciled with each other.

In October 2010 the Second Circuit decided *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010), an opinion which did much to remedy the lack of appellate authority in cases such as the one at bar, where an employer contests the right of an employee to sue for FLSA violations on behalf of

4

other employees as well as himself. Those cases turn in principle upon whether the other employees in question are "similarly situated" to the named plaintiffs, as that phrase is used in § 216(b) of the statute. In *Myers*, the Second Circuit articulated certain principles applicable to such cases, and described in detail the proper practice for district courts to follow in determining whether, in this early stage of litigation, a district court should allow an individual FLSA plaintiff to commence a collective action on behalf of other employees. To understand the present state of the law in this Circuit, the *Myers* opinion must be carefully analyzed.

In *Myers*, the Second Circuit distinguished between what a plaintiff must show to obtain certification of a collective action under the FLSA as opposed to class certification under Fed.R.Civ.P. 23. The named plaintiff in *Myers* was employed as a "Station Manager" at a car rental facility owned by defendant Hertz. She put in long hours, but received no overtime because Hertz classified all its station managers as executive employees for FLSA purposes, and consequently exempt from the statute's mandated overtime. Plaintiff, contending that this classification violated the FLSA, initially intended her suit against Hertz to be a nationwide collective action under § 216(b) of the statute. She contended that all Hertz station managers were "similarly situated" employees as that phrase is used in § 216(b). The district court denied certification as a collective action, and refused to certify its decision for interlocutory appeal. Plaintiff's strategic response was to move under Rule 23 to certify a class of New York station managers, on a New York state law claim for the "timely" payment of wages. Plaintiff's counsel "indicated to the district court that the class certification motion would be used as a vehicle to get [the district court's] earlier ruling, and in particular the Collective Action Ruling, before [the court of appeals] on an interlocutory basis if the district court were to deny the motion." 624 F.3d at 545. The district court denied class

certification under Rule 23. Plaintiff appealed that denial, and argued on appeal that the Second Circuit should also exercise pendent appellate jurisdiction over the district court's earlier denial of the FLSA collective action certification.

The *Myers* plaintiff's invocation of pendent appellate jurisdiction, which proved unsuccessful, triggered the Second Circuit's discussion bearing directly upon the case at bar. In that discussion, 624 F.3d at 552-558, the court of appeals draws a careful distinction between, on the one hand, what a plaintiff must show to obtain an FLSA § 216(b) collective action certification on the basis of *similarly situated* employees, and on the other hand, what a plaintiff must show to obtain a Rule 23(b)(3) class certification on the ground that common questions *predominate* over individual ones. The present motion is governed by the first standard, not the second.

The Second Circuit began its *Myers* analysis by acknowledging: "We have not yet provided clear guidance on the standard district courts should apply to motions seeking certification of a 'collective action' under § 216(b) of FLSA." 624 F.3d at 554. The court then referred to "a two-step method" formulated by district courts in the Circuit in FLSA cases which the court of appeals praised as "sensible," *id*. at 555, an appellate benediction which establishes the two-step method as the law of the Circuit. *Myers* describes its operation thus:

> The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. In an FLSA exemption case, plaintiffs accomplish this by making some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a

6

common policy or scheme. The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* "similarly situated" plaintiffs do in fact exist. At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining if the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Id*. (citations, some internal quotation marks and ellipsis omitted; emphasis in original).

In *Myers*, the Second Circuit declined to exercise pendent appellate jurisdiction over the district court's denial of an FLSA collective action certification because that ruling was not "inextricably intertwined" with the district court's denial of a Rule 23 class certification, the standard for pendent jurisdiction imposed by the court of appeals. The *Myers* court based that conclusion on differences between the motions and what a plaintiff must show with respect to each of them. Again, it is instructive to quote the Second Circuit's reasoning:

The plaintiffs here ask us to review the district court's decision to deny their motion to send opt-in notice to potential class members – a first-stage determination as described above. We conclude that this ruling does not satisfy the standard we have articulated for the exercise of pendent appellate jurisdiction. Review of the Collective Action Order on the merits would require us to determine whether the district court abused its discretion in determining that plaintiffs had failed to make the "modest factual showing" that potential plaintiffs existed who were "similarly situated" to themselves. *See Hoffman-La Roche*, 493 U.S. at 169, 110 S.Ct. 482 (noting that district courts have "discretion" to implement § 216(b) by facilitating the sending of notice). That question is quite distinct from the question whether plaintiffs have satisfied the much higher threshold of demonstrating that common questions of law and fact will "predominate" for Rule 23 purposes in the eventual action. While the two issues in this case are admittedly similar, we are easily able to determine here that the higher predominance standard has not been met without addressing whether the same evidence plaintiffs have put forward in support of

> Rule 23 class certification could satisfy the lower standard for the
> sending of notice pursuant to § 216(b) and *Hoffman-La Roche. . . .*
> The two rulings are therefore not "inextricably intertwined" because
> the "same specific question" does not underlie each ruling, and
> review of the Collective Action Order is not "necessary to ensure
> meaningful review" of the class certification decision.

624 F.3d at 556.

## 3.   The Effect of the Court of Appeals' Decision in *Myers* upon Recent District Court Decisions

The Second Circuit's 2010 decision in *Myers* gave binding instructions to district courts in a prolific, sensitive and important area of labor law.  As one would expect, *Myers* has been cited repeatedly by district courts in the Circuit.  District court decisions in 2011 and 2012 evince unmistakable lines of authority and governing principles, generated or reinforced by the Second Circuit's reasoning in *Myers.*  Illustrative of these, and to my mind particularly persuasive, are *D'Antuono v. C&G of Groton, Inc.*, No. 3:11-cv-33, 2011 WL 5878045 (D.Conn. Nov. 23, 2011) (Kravitz, J.); *Alli v. Boston Market Co.*, No. 3:10-cv-4, 2011 WL 4006691 (D.Conn. Sept. 8, 2011) (Hall, J.); *Salomon v. Adderley Industries, Inc.*, No. 11 Civ. 6043, 2012 WL 716197 (S.D.N.Y. March 6, 2012 (Crotty, J.); *Winfield v. Citibank, N.A.*, Nos. 10 Civ. 7304 and 5950, 2012 WL 423346 (S.D.N.Y. Feb. 9, 2012) (Koeltl, J.); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 160, 2012 WL 260230 (S.D.N.Y. Jan. 27, 2012 (Oetken, J.); *Ibea v. Rite Aid Corporation*, No. 11 Civ. 5260, 2012 WL 75426 (S.D.N.Y. Jan. 9, 2012) (Rakoff, J.); and *Pippins v. KPMG LLP*, No. 11 Civ. 377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) (McMahon, J.).

I will quote from those opinions in order.  The words appearing in quotation marks are taken from the texts of the opinions. Most citations, internal quotation marks, ellipses and footnotes are omitted.

***D'Antuono***:  The district court issued a conditional certification of an FLSA § 216(b) collective action where plaintiff exotic dancers at the defendant nightclub alleged that all exotic dancers were mislabeled by the club as independent contractors and denied mandated compensation in consequence.  Defendant contended that some, if not all, of the dancers had signed arbitration agreements barring court actions.  Describing the two-step conditional certification process endorsed by *Myers*, Judge Kravitz said that to satisfy the first step, "the plaintiff need not show definitively that other potential opt-in plaintiffs are *actually* similarly situated: Conditional certification depends not on whether the potential collective members are in fact 'similarly situated,' but on whether the plaintiff has made a modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law. . . . At the conditional certification stage, the court does not resolve factual disputes, decide substantive questions on the merits, or make credibility determinations. . . . In limited situations, after extensive discovery, a court will bypass the first stage of the certification process and move directly to the second stage. However, case law does not require that just because discovery is underway a FLSA collective action plaintiff should be held to a higher standard."  2012 WL 5878045, at *1-*2.

Where "the potential class members are all alleged to have held similar positions – the only individualized questions are whether each dancer signed an arbitration agreement and whether that agreement is enforceable," that question "is irrelevant to class certification, because it raises a merits-based determination, even though the courts must understand that the enforceability of those agreements will eventually need to be determined on an individual basis. . . . The Court finds that Ms. Cruz has alleged sufficient facts to conditionally certify a class.  If they so wish, Defendants may file a motion for decertification at a later date." *Id.* at *4-*5.

*Alli*:  The district court conditionally certified an FLSA § 216(b) collective action in favor of "assistant general managers" ("AGMs") of defendant Boston Market, who claimed they were illegally denied minimum wages and overtime.  Boston Market classified all its assistant general managers nation wide as exempt under the statutory and regulatory scheme.  Judge Hall noted that "District courts in this Circuit have generally employed a two-stage process in deciding whether such an FLSA action should proceed as a collective action," citing *Myers* and other cases, and went on to say:  "The merits of the plaintiffs' FLSA claim are not directly relevant to the decision whether to certify a collective action . . .  A ruling on a motion for conditional certification is confined to an analysis of whether plaintiffs have shown that the putative collective action members in this case are sufficiently 'similarly situated' as to warrant the case conditionally proceeding as a collective action.  The plaintiffs need not be identically situated to potential class members.  Plaintiffs need only present evidence that demonstrates similarity among the individual situations . . . some identifiable factual nexus which binds the named plaintiffs and the potential class members together as victims of a common policy or scheme. . . .."  2011 WL 4006691, at *1-*2.

"Here, plaintiffs have met their modest burden of submitting evidence that AGMs, Hospitality Managers, and Culinary Managers perform similar work at each of Boston Market's restaurants.  As for the showing of common policy, Boston Market does not dispute that it has uniformly categorized all AGMs, Hospitality Managers, and Culinary Managers outside of California as 'exempt' from the overtime provisions of the FLSA.  Notably, although Boston Market argues that there is evidence of differences between the jobs performed by AGMs, Boston Market does not contend that it considers those differences or makes any case-by-case determination of whether to classify particular AGMs as exempt.  The evidence is sufficient to satisfy plaintiffs' modest initial

burden of submitting evidence that there are other similarly situated plaintiffs who have been subject to the same common policy." *Id.* at *5.

Judge Hall also noted plaintiffs' evidence that "Boston Market's training and orientation policies provide further indication that the positions at issue are highly consistent, if not uniform, from restaurant to restaurant," including "a uniform orientation" at which "employee guidelines" are distributed, and "a standardized eight week training program for new AGMs, promulgated at the corporate level, and conducted only by certified trainers at specific, certified training restaurants." *Id.* at *4. Judge Hall quoted the distinction *Myers* drew between the modest showing a plaintiff must make to obtain conditional certification of an FLSA collective action and "the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for Rule 23 purposes," and concluded: "Assuming for the sake of argument that these Rule 23 cases might provide some guidance in FLSA collective action cases, they do not alter the standard applicable at the initial, conditional certification stage. Until the potential plaintiffs receive notice and decide whether to opt-in, the court should not and will not decide whether the case actually ought to be resolved as a collective action." *Id.* at *5 n.3. The court granted a conditional certification of a collective action and authorized the sending of notices to present and former Boston Market AGMs.

***Salomon***: The district court granted conditional certification for an FLSA collective action for unpaid wages and overtime on behalf of field technicians who installed and repaired cables and rendered cable related services, were employed by the defendant company, and were paid a fixed amount per job rather than by salaried wages. Defendant opposed the named plaintiffs' motion for conditional certification on the ground that "Plaintiffs and the putative collection action members are not 'similarly situated.'" 2012 WL 716197, at *1.

11

Giving judgment in plaintiffs' favor, Judge Crotty noted the Second Circuit endorsement in *Myers* of the two-step analysis, and then said: "In the first stage of analysis, a court determines whether notice should be sent to optional opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs, thus issuing a 'conditional certification' of the collective action. Plaintiffs' burden at this stage is minimal; Plaintiffs need only make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law [citing and quoting *Myers*]. Plaintiffs can satisfy their burden by showing there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions. Of course, Plaintiffs cannot rely on unsupported assertions to satisfy the modest factual showing; but courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice. In the second stage of analysis, a court determines whether the 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. If the plaintiffs are not similarly situated, then the collective action may be de-certified and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.* at *1-2.

"At the initial notice stage, Plaintiffs have to make only a modest factual showing that they and other employees were victims of a common policy or plan. The four named Plaintiffs and one opt-in Plaintiff provided declarations in support of the motion. Plaintiffs' declarations show that the Defendant employs approximately fifty field technicians." Those declarations, when read together, "made a modest factual showing that all the putative plaintiffs held the same position, performed the same duties, were subject to the same piece-work-based compensation scheme and were not paid overtime. Defendant argues that Plaintiffs and putative class members are not similarly situated

12

because they worked different hours, completed different jobs during the day, and thus received different pay.  They argue that since the hours worked, jobs performed, and pay received is unique to each field technician, individual issues will predominate over any common issues.  The relevant issue here, however, is not whether Plaintiffs and potential opt-in plaintiffs were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.  Moreover, a fact-intensive inquiry is inappropriate at the notice stage, as Plaintiffs are seeking only conditional certification.  The Defendant will have an opportunity to argue that individual inquiries predominate over common issues, based on discovery, at the second phase.  Accordingly, Defendant's argument is premature. . . . Since Plaintiffs have satisfied their burden of making a modest factual showing that they and other employees were victims of a common policy or plan, the Court grants Plaintiffs' motion to conditionally certify the collective action."  *Id.* at *2-*3.

*Winfield***:**  The district court granted nationwide conditional certification for an FLSA collective action on behalf of "Personal Bankers" employed by defendant Citibank, who claimed that defendant "employed a dual-edged policy of strictly limiting the amount of overtime that Personal Bankers could accrue while imposing rigorous sales quotas that could not feasibly be met in a forty-hour work week."  2012 WL 423346, at *2.  The intended and inevitable result of the policy, plaintiffs contended, was to deprive Citibank Personal Bankers of overtime mandated by the FLSA.  Defendant opposed a conditional certification.  Granting certification, Judge Koeltl summarized the *Myers*-approved two-step analysis, and then said:  "In exercising its discretion at the conditional certification stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.  The plaintiffs need only make a modest factual

13

showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law [citing and quoting *Myers*]."  *Id.* at *3.

"On a motion for conditional certification courts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective action notice.  That approach is consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class to allow members to opt-in to the lawsuit.  Moreover, the Defendant will have another opportunity to object to class certification after discovery. . . . In this case, the plaintiffs have satisfied their minimal burden of showing that they are similarly situated to one another and to potential opt-in plaintiffs. Five plaintiffs, one opt-in plaintiff, and four declarants each allege that they were employed as Personal Bankers, a position classified as non-exempt, and were not always compensated for time worked in excess of forty hours per week.  Two of the plaintiffs and a declarant also testify that they are aware of other Personal Bankers who similarly worked overtime and were not always compensated for overtime worked.  The plaintiffs and declarants assert that the failure to pay overtime was the result of defendant's conflicting policies of strictly limiting the number of overtime hours that could be accrued while simultaneously encouraging Personal Bankers to work overtime by requiring them to meet strict sales quotas that could not reasonably be accomplished in a forty-hour work week.  Moreover, the plaintiffs have presented evidence that their sales quotas were set by uniform nationwide standards in which the quotas were proportional to Personal Bankers' salaries, and that these quotas were enforced by a nationwide step-by-step disciplinary process with penalties including probation and termination."  *Id.* at *4.

"The defendant contends, however, that the plaintiffs are not similarly situated to one another

14

and to other potential opt-in plaintiffs because their testimony reveals inconsistencies regarding the plaintiffs' motives for working overtime; how much overtime, if any, they were paid; and what job duties they performed, among other purported discrepancies. However, the relevant issue is not whether Plaintiffs and potential opt-in plaintiffs were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week. The plaintiffs need not demonstrate that they are similarly situated in every respect, provided they are similarly situated with respect to the FLSA violations they allege . . . . [T]he proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated *with respect to their allegation that the law has been violated* and rejecting the argument that circumstances unique to each individual precluded a similarly situated finding [emphasis in original]. Thus, the plaintiffs and declarants' common allegations that they were effectively required to work more than forty hours per week but were not compensated for all overtime hours worked suffice to meet their minimal burden of showing that they are similarly situated to one another and to potential opt-in plaintiffs." *Id.* at *5-6.

"The defendant contends that the plaintiffs should be required to meet a more exacting standard because substantial discovery has already been conducted in this case. However, the defendant does not cite any case in this Circuit that has adopted this approach. Instead, the case law is clear that a heightened standard is not appropriate during the first stage of the conditional certification process and should only be applied once the entirety of discovery has been completed." *Id.* at *3 n.3.

*Jacob*: The district court granted nationwide conditional certification for an FLSA collective action on behalf of defendant Duane Reade's assistant store managers ("ASMs") on a claim for

overtime, defendant having classified all ASMs as exempt from the overtime provisions of the FLSA. In these regards, the case is the mirror image of the case at bar. Granting certification, Judge Oetken summarized *Myers*'s endorsement of the two-step process, and then said: "At this preliminary stage, the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated. The court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists. In a FLSA exemption case, plaintiffs make a modest factual showing by providing some evidence that there are other employees who are similarly situated with respect to their job requirements and with regard to pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." 2012 WL 260230, at *4.

"Plaintiffs have met their minimal burden of demonstrating that ASMs at Duane Reade are similarly situated. Relying on deposition testimony, Duane Reade's uniform job description for the ASM position, and other documents, Plaintiffs have made the requisite modest factual showing that ASMs at Duane Reade perform similar non-managerial job duties and do not receive overtime for the hours worked in excess of forty per week. Plaintiffs claim that all ASMs, notwithstanding location, have the same primary job functions, mainly manual labor and routine non-managerial duties. Plaintiffs assert that the majority of ASMs' time at work is occupied stocking and organizing shelves, unpacking boxes, stacking merchandise, cleaning stores and storerooms, taking out garbage, unloading trucks, and performing customer service and other non-managerial duties. ASMs report having identical responsibilities despite working in different locations. Plaintiffs also assert that Duane Reade makes decisions at a corporate level, which are implemented uniformly in Duane

16

Reade's stores, and as a result, ASMs have no ability to make individualized decisions in their stores. For example, Duane Reade issues chain-wide detailed 'planograms' that instruct ASMs how to set up their stores so that merchandise is presented identically in every store. Duane Reade's corporate office also mandates a uniform protocol for ordering merchandise, requiring ASMs to scan the shelves with a computerized scan-gun to track inventory. Moreover, Duane Reade readily admits that it classifies all ASMs as exempt from FLSA's overtime requirements." *Id.* at *4-*5.

"Defendants argue that the Court should not certify the class because Plaintiffs rely solely on 'conclusory allegations' that ASMs are exempt from the FLSA, but fail to provide sufficient evidence 'that Plaintiffs are *actually* misclassified, that Plaintiffs are similarly situated with regards to that misclassification, and that Plaintiffs are victims of a common 'illegal' policy or plan by Duane Reade to misclassify them.' At the crux of this argument is Defendants' contention that Duane Reade's classification of all ASMs as exempt is proper and that the ASM job description, as revised in 2007, is facially valid. Defendants argue that Plaintiffs cannot rely on a lawful uniform policy or job description to demonstrate that ASMs are similarly situated for the purposes of FLSA certification. Plaintiffs, however, do not concede that Duane Reade's job description supports exempt classification for all ASMs, and it is inappropriate to determine at this stage the unbriefed issue of whether the ASM job description is consistent with a position rightfully exempt from the FLSA overtime requirements. Defendants' arguments that Plaintiffs are correctly classified and that Plaintiffs' claims fail on the merits are largely premature. Whether defendants had a common policy or plan that violated the FLSA raised a factual issue that was inappropriate to resolve at the collective certification stage. Courts need not resolve the merits in order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of authorizing notice." *Id.* at *5.

"Defendants also argue that Plaintiffs have failed to demonstrate that all ASMs are similarly situated. Defendants maintain that 'notwithstanding certain similar basic supervisory and managerial responsibilities, the differences among ASMs' experiences at Duane Reade are striking,' and that even the duties of the two named plaintiffs, Mani Jacob and Lesleena Mars, differ significantly. . . . [B]efore the Court is not whether Plaintiffs and other ASMs were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week. . . . [S]ome variance in ASMs' job duties is hardly relevant to whether plaintiffs and potential opt-in plaintiffs were common victims of an illegal application of the 'bona fide executive' exemption to overtime compensation requirements. On defendant's logic, no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele. The fact that the employees in the putative class performed different functions does not bar conditional certification. All of the employees who performed different functions were subjected to the same alleged unlawful policy that violated the FLSA. Furthermore, Defendants did not consider the differences in ASMs' job duties sufficient to require Duane Reade to undertake an individual analysis before categorically classifying all ASMs as exempt from the FLSA, although Duane now portends that such individualized inquiry will be necessary if the Court certifies the collective action. . . . In sum, Plaintiffs have made more than the necessary 'modest showing' that ASMs at Duane Reade are similarly situated, and this Court conditionally certifies the collective [action] pursuant to Section 216(b) of the FLSA." *Id.* at *7-*9.

*Ibea*: District Judge Rakoff, affirming the order of Magistrate Judge Pitman, granted conditional certification for an FLSA collective action for overtime on behalf of "co-managers"

("CMs") employed by defendant Rite Aid.  Judge Rakoff analyzed the effect of the Second Circuit's opinion in *Myers* by saying (the internal quotations are from *Myers*):  "When deciding whether to certify under 29 U.S.C. § 216(b), courts employ a 'two-step method.'  Judge Pitman's order addressed only the first step of this inquiry.  'The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred.'  As the Second Circuit noted, the term 'certification' does not accurately describe the determination a court makes at the first step because a court exercises only its 'discretionary power . . . to facilitate the sending of notice to potential class members.'  Accordingly, to prevail on the first step of the certification inquiry, plaintiffs must make only 'a modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  2012 WL 75426, at *1.

Turning to the facts of the case before him, Judge Rakoff said:  "Judge Pitman concluded that Ibea had made a modest showing that Rite Aid co-managers ("CMs") were victims of a common and unlawful policy or plan.  He based this conclusion on 'the common job description, the testimony of Ibea and the opt-ins that we currently have that they perform the same duties, uniform job requirements set by Rite Aid, uniform training materials, the same compensation and the same work rules and the fact that no co-managers were paid overtime during the class period.' . . . Judge Pitman further clarified that he relied on Ibea's evidence 'that during the relevant time period, all CMs worked under the same job description, plaintiff and the six opt-ins performed the same primary duties, all CMs had to meet uniform job requirements, uniform training materials were prepared for all CMs, all CMs were paid in the same manner, were not paid overtime and were all subject to the same work rules.'  While common treatment alone is insufficient to justify conditional certification,

the evidence to this effect does lend support to conditional certification in so far as it supports that Defendants treated Plaintiffs and potential opt-in plaintiffs with uniform pay and employment-related policies.  Defendant's citation to *Myers* for the proposition that common treatment 'does not establish whether all plaintiffs were *actually* entitled to overtime pay,' 624 F.3d at 549, is not to the contrary because plaintiffs need not prove their entitlement on the merits to satisfy a court that, other similarly situated individuals likely exist." *Id.* at *2.

"[Defendant's] objections all mischaracterize the applicable standard, arguing that Judge Pitman should have considered defendant's evidence that Ibea is not similarly situated to other Rite Aid CMs.  Defendant's arguments misconstrue the standard in two respects.  First, courts do not address whether a plaintiff is similarly situated to a class until the second stage of the certification inquiry, which Judge Pitman has not yet reached.  At the first stage, courts consider only whether other, similarly situated plaintiffs likely exist, something Ibea has amply demonstrated.  Second, at the second stage of the certification inquiry, courts consider whether the plaintiffs who actually opt in are similarly situated, not whether all members of a certain profession are similarly situated.  Thus, Ibea's similarities to other CMs become relevant only when those CMs actually join the class, just as Judge Pitman found. . . . Rite Aid's ninth objection merely relies on the cumulative force of its other objections to urge that the Court set aside Judge Pitman's decision to conditionally certify Ibea's class.  Having rejected Rite Aid's other objections, the Court rejects the ninth objection for the same reasons.  Accordingly, the Court affirms Judge Pitman's order in its entirety." *Id.* at *3.

*Pippins*:  The district court granted conditional certification for an FLSA collective action for unpaid overtime on behalf of "Audit Associates" employed by defendant KPMG, who defended against the action on the grounds that Audit Associates fell under the administrative and professional

20

exemptions to the statute's mandated wage and overtime provisions.  Judge McMahon said:  "The applicability of KPMG's affirmative defenses are not at issue on this motion, however; the only issue presently before the Court is whether Plaintiffs have made the preliminary showing to have their entitlement to overtime, and the applicability of these exemptions, litigated as a 'collective action.'" 2012 WL 19379, at *4.

"Neither the FLSA nor its implementing regulations define 'similarly situated.'  However, courts in this Circuit require that plaintiffs only make a modest factual showing that plaintiffs and other putative collective action members were victims of a common policy or plan that violated the law.  To meet this standard, plaintiffs must proffer substantial allegations of a factual nexus between the named plaintiffs and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation.  Plaintiffs can meet this burden by relying on their own pleadings, affidavits, declarations, or the declarations of other potential class members.  Evidence outside the scope of the complaint is properly considered for this purpose, but if defendants admit that the actions challenged by plaintiffs reflect a company-wide policy, it may be appropriate to find plaintiffs similarly situated based solely on plaintiffs' substantial allegations, without the need for additional evidence.  Importantly, Courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of misclassifying employees as exempt."  *Id.* at *5-*6.

"KPMG argues, as the statute contemplates, that the question of whether an employee qualifies as exempt is determined by an individual employee's respects specific job duties.  Whether employees qualify as professionals or administrators present a fact-specific inquiry.  However, courts here and elsewhere frequently find that this does not preclude conditional certification of collective

actions.  Where there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about 'individualized' differences in job responsibilities.  The record before this Court indicates that all Audit Associates at KPMG are 'similarly situated' for collective action purposes, at least preliminarily.  Plaintiffs have more than satisfied their minimal burden by showing that 'there are other employees who are similarly situated with respect to [1] their job requirements, [2] their pay provisions, and who are [3] classified as exempt pursuant to a common policy or scheme' (citing and quoting *Myers*, 624 F.3d at 555)."  *Id.* at *8.

"Plaintiffs have submitted pleadings, affidavits and other evidence sufficient to establish that they are similarly situated with respect to their job duties and requirements. . . . Plaintiffs' testimony that their job duties are similar in all relevant respects is supported by other evidence.  KPMG's job description for the position of Audit Associate is identical across offices, as is its articulation of the job responsibilities performed by employees with the Audit Associates title.  KPMG admits that all Audit Associates undergo the same basic training regimen, and that KPMG makes available audit guidance materials for its Audit Associates to use during the course of their jobs.  The KAM-US states that Audit Associates must follow KPMG's policies and requirements regarding how KPMG teams are to conduct audits."  *Id.* at *9.

"KPMG admits that it uniformly classifies all its Audit Associates as exempt from the overtime requirements of the FLSA.  That uniform classification is done without regard to any special or individualized functions that any particular Audit Associate performs or where the Audit Associate works or what type of companies he/she audits; there is, in short, no person-by-person

determination of exempt or non-exempt status.  That an employer itself makes such a blanket determination is evidence that differences in the position, to the extent there are any, are not material to the determination of whether the job is exempt from overtime regulations.  Based on the declarations and allegations, KPMG's policies and practices relative to the misclassification of Audit Associates do not vary, and instead affect all Audit Associates the same nationwide.  Such commonality in position, classification and treatment by KPMG constitutes a common scheme or plan that renders all Audit Associates similarly situated for FLSA purposes."  *Id.* at *10.

In addition to these post-*Myers* district court opinions, significant enlightenment may also be derived from three opinions by District Judge Lynch (as he then was, *en route* to the seat he now occupies on the Second Circuit):  *Damassia v. Duane Reade*, *Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008); *Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007); and *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006).  The first-cited of these opinions certified a Rule 23 class action of overtime claims under New York law, and is consequently inapposite to the present FLSA motion.  However, in the earlier two cases, Judge Lynch conditionally certified FLSA collective overtime actions on behalf of classes of assistant daytime and evening assistant store managers (06 Civ. 2295) and assistant night managers (04 Civ. 8819), respectively.  Judge Oetken cited Judge Lynch's opinions approvingly when he came to certify a Duane Reade assistant store manager FLSA collective action in the post-*Myers* case from which I quoted *supra*; and in fact, Judge Lynch's reasoning applies to case at bar, as does the Second Circuit's reasoning in *Myers* and that of its other district court progeny also cited and quoted *supra*.

4.      **Application of these Authorities to the Case at Bar**

The preceding quotations from the Second Circuit's opinion in *Myers,* and from the district court cases citing and following *Myers,* are, I fear, so lengthy as to tax the patience of the most indulgent reader.   Nonetheless, the exercise is worth the effort, because principles emerge from these cases with such uniformity and clarity that I am able to conclude, without difficulty and with contrasting brevity of expression, that the named plaintiff PriceRite assistant store managers are entitled to the conditional certification of an FLSA class for which they pray in this motion. Plaintiffs' evidence on the present record is the same as that upon which district courts in this circuit routinely grant conditional certifications.   Each of the arguments PriceRite makes in opposition to certification has been rejected by one district court or another.   Conditional certification of an FLSA collective action in this case could not be refused without disregarding the principles clearly articulated by the Second Circuit in *Myers* and followed uniformly by its district court progeny.

a.      **The Plaintiffs' Evidence.**

Plaintiffs assert, and Defendant does not dispute, that PriceRite classifies each of its assistant store managers as an "executive" employee, consequently exempt from the mandatory  FLSA provisions requiring payment of overtime.   While that uniform classification is not sufficient, standing alone, to justify a conditional FLSA certification, it is obviously probative on the question of whether PriceRite ASMs are "similarly situated" as that phrase is used in § 216(b):  probative value strengthened by the apparent fact that PriceRite does not perform any individualized evaluations to determine which ASMs should be classified as "executive" employees – they all are. That is a factor which a number of district courts, displaying common sense, take into consideration in concluding that the classified employees in question are "similarly situated."

24

Plaintiffs at bar submit additional evidence. Their initial presentation [Doc. 30-1] includes sworn declarations by the three named plaintiffs and two additional PriceRite assistant store managers, Kevin Boyce and Christopher Heersink. These five ASMs worked at one time or another in twelve of PriceRite's 47 retail stores. Their declarations contain these averments:

(1) PriceRite's job postings for the position of assistant store manager are uniform. They summarize an ASM's general duties and specifically list their "essential duties and responsibilities" in identical language.

(2) These five declarants spend more than 75 percent of their time working as ASMs in the performance of manual labor and non-management duties, such as shelving merchandise, counting money, unpacking boxes, loading and unloading trucks, processing shipments, and helping customers. Based upon the five declarants' observations, those relatively humble tasks performed by ASMs do not vary significantly from store to store. In the declarants' experience, all PriceRite ASMs spend most of their time performing tasks identical to those performed by "hourly associates," a category of employee who presumably PriceRite would not attempt to classify as "executive."

(3) The tasks of hiring and staffing a particular PriceRite store are reserved to the store managers, and are not assigned to assistant store managers. ASMs do not have the authority to determine which of their various duties should be completed on a given day or when. They do not decide what merchandise to order or what to put on the shelves. These directions are issued by the store manager or are generated by PriceRite's corporate headquarters, whose business model stresses and requires uniformity among the fleet of retail stores. ASMs cannot fire, promote or demote employees, or raise or lower their own pay.

(4) Since January 2008, all PriceRite assistant store managers are required to take a uniform

six-week training process, called "the Regional Management Training Program," which includes issuance of a "Management Orientation Manual" whose specific directions all ASMs are expected to follow.

Plaintiffs also took the deposition of Kathy Freedman, a Senior Human Resource Manager at PriceRite who was involved in the company's decision to classify ASMs as exempt employees, and is familiar with the training, duties and functioning of ASMs. The parties predictably differ about the meanings and interpretations of what Freedman said and did not say during her deposition, but she did state that uniform PriceRite corporate policy details employees' job duties; the same detailed job description is given to each ASM which each ASM is required to follow; corporate efforts are made to ensure that ASMs' jobs are uniform and consistent from store to store and state to state; the ASM position has not changed in 17 years; there is only one ASM job description and one set of duties for all PriceRite stores; those job descriptions are provided to ASMs to instruct them as to their duties; and all ASMs, for all stores and in all states, are trained in the same way through methods supervised by the same individual. *See* citations to deposition transcript, Plaintiffs' Reply Brief [Doc. 54] at 4.

Employers' use of practices such as these appear with regularity throughout the cited cases. They make good business sense. The Court is not critical of them. However, when such practices respecting a particular group of employees are coupled with the employer's uniform classification of all members of that group as "exempt," the conclusion is compelled that the employees are "similarly situated" for purposes of an FLSA action challenging the validity of the exemption. That is the conclusion of each of the cited district court cases which cite and follow *Myers*. I agree with the reasoning of those cases, and reach the same conclusion in this one.

###### b.   Defendant's Arguments

Defendant's principal brief in opposition to a conditional certification [Doc. 53] makes these arguments:

(1)  Plaintiffs' "mere allegation of misclassification" is insufficient to warrant conditional certification of the proposed class.  A "common classification [as exempt] alone is not sufficient to justify certification."  [Doc. 53] at 16.

(2) PriceRite's common policies and procedures with respect to employees are insufficient for conditional classification because those policies and procedures are not illegal.  "[W]hile Plaintiffs describe the policies and procedures at some length, nowhere do they allege that these policies violate the law.  Because Plaintiffs and the putative opt-in plaintiffs "are not 'victims' of the cited PriceRite policies and procedures, they should not be conditionally certified as a class."  [Doc. 53] at 17.

(3)  "[T]o the extent Plaintiffs claim they did non-exempt work in contravention of a job description, they cannot then rely on that job description to serve as the common link for the putative class." [Doc. 53] at 22.

(4) Collective treatment is inappropriate because the claims of the Plaintiffs and putative opt-in plaintiffs "are so individual as to be unamenable to collective treatment."  That conclusion follows, Defendant argues, relying principally upon deposition testimony, because "the extent, nature, and quantity of the managerial functions Plaintiffs performed varied, as did the extent, nature, and quantity of their named work."  Defendant adds:  "An individual analysis will also be necessary because, as Plaintiffs have explained, at certain times they performed manual and management work concurrently."  It follows, Defendant concludes, that "Plaintiffs' individualized accounts, which are

not linked by any illegal common policy or plan, are not appropriate for collective action treatment." [Doc. 53] at 28-30.

**c.     Analysis**

No extended discussion is necessary to demonstrate that PriceRite's arguments, singly or in concert, are insufficient in law to bar a conditional certification of a collective action in this case.

First, Plaintiffs are not relying solely on PriceRite's classification of all ASMs as exempt. That is a factor courts properly consider at this preliminary stage.  It supports certification when joined with other factors, which are also demonstrated by Plaintiffs' proof.

Second, it is irrelevant to the propriety of conditional classification that those other factors, the PriceRite practices and policies, are not themselves illegal.  The relevant illegality charged against PriceRite is that classifying ASMs as "executive" exempt employees violated the FLSA. That is the ultimate merits question, determined principally by the ASMs' "primary duty" when viewed through the prism of the regulatory scheme.

Moreover, the cited district court cases uniformly and properly hold that whether PriceRite's classification of ASMs as exempt employees *actually violates* the FLSA, as Plaintiffs allege, cannot and should not be decided at the preliminary first step of the certification process.  At this stage, the named Plaintiffs need only demonstrate that they and potential opt-in plaintiffs "are similarly situated with respect to the FLSA violations *they allege*," *Winfield,* p. 15, *supra.  Jacobs*, p. 16, *supra*, is to the same effect:  "At this preliminary stage, the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their *allegations* that the law has been violated."  Plaintiffs at bar clearly make that showing, and it suffices for a conditional certification.

Third, Plaintiffs do not rely solely upon the accuracy of the uniform ASM job description to justify conditional certification.  As noted, the evidence identifies a number of additional factors, recognized by the cases, which support the conclusion that it is *likely* (all that is required) that employees similarly situated to the named Plaintiffs may be found amid the ranks of PriceRite ASMs.

Fourth, Defendant overstates the extent to which the present record evidence shows the situations of all members of the plaintiff pool must be individualized.  The named Plaintiffs' declarations show far greater similarities between them than differences with respect to the regulatory tests for "primary duty," *see* Plaintiffs' Reply Brief [Doc. 54] at 7-8; any discrepancies harvested from depositions thus far border upon nit-picking (with all due respect to energetic counsel).  An objection at this preliminary stage to conditional classification based upon individual employees' asserted different circumstances is clearly part of the FLSA defense bar's play book, but it has not found favor with the courts, and it does not persuade this Court in this case.  This is the sort of issue that is more properly considered on a more complete record.  If some district courts have held that post-conditional certification discovery cannot deal adequately with the question of individual differences among plaintiffs, I do not agree with them.

For the foregoing reasons, and in the exercise of the Court's discretion, a conditional certification of an FLSA collective action will be made in this case.

B.      **The Notice to Putative Opt-In Plaintiffs**

The Court approves the sending of a notice to putative opt-in FLSA plaintiffs, as Plaintiffs at bar request and is customary in such cases.  No further discussion on the point is necessary.

### III.  CONCLUSION

The motion of the named Plaintiffs for an order granting conditional certification of a collective action under the Fair Labor Standards Act is GRANTED.  The class of putative plaintiffs includes all other persons who are presently employed or have been employed in the past by Defendant PriceRite as Assistant Store Managers.

The motion of Plaintiffs for leave to send a Notice to such persons is GRANTED.  Counsel are directed to confer and agree, if they can do so in good faith, upon the text of the Notice.  They are further directed to write letters to the Court, with copies to each other, on or before March 28, 2012, advising whether the text and form of the Notice has been agreed to by the parties and attaching a copy of that Notice; or, if there is no agreement, stating what their opposing contentions are and submitting proposed texts.  In the latter event, the Court will decide the text and form of the Notice and any related issues.

The foregoing is SO ORDERED.


New Haven, Connecticut
March 20, 2012


*Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge


30